UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARY ANNE FUENTES,

               Plaintiff,                                Hon. Janet T. Neff

v.                                                   Case No. 1:10-CV-200

CITY OF GRAND RAPIDS, et al.,

               Defendants.

_____/


## REPORT AND RECOMMENDATION

       This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>.  (Dkt. #62).  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and Plaintiff's action dismissed.


## BACKGROUND

       The following is gleaned from Plaintiff's amended complaint as well as documentary evidence submitted by the parties.  Plaintiff suffers from a "chronic" and "serious" mental health condition "that is perpetuated by stress."  (Dkt. #39 at ¶¶ 6, 30, 37, 54).

       In June 1999, Plaintiff began working in the City of Grand Rapids Assessor's Office. (Dkt. #39-4 at 6 of 18).  In December 2001, Plaintiff "took two weeks off of work due to depression." (Dkt. #64, Exhibit C)[1].  Plaintiff took another two weeks off in March 2002 due to depression.  In April 2002, Plaintiff began experiencing "visual and auditory hallucinations" after which she "took an FMLA

---

[1] Plaintiff has attached portions of this exhibit to her complaint.  The complete exhibit has been submitted by Defendants.

leave due to depression." (Dkt. #39-4 at 6 of 18; Dkt. #64, Exhibit C). Plaintiff returned to work in September 2002 and was soon thereafter transferred to the Parks and Recreation Department. (Dkt. #39-4 at 6 of 18). On October 25, 2002, Plaintiff began treating with Dr. Gary Rich with Pine Rest Christian Mental Health Services. (Dkt. #39-2 at 8 of 14). Plaintiff was diagnosed with bi-polar disorder and panic disorder which are triggered "by stress and changes in her work environment." *Id.* After beginning treatment with Dr. Rich, Plaintiff's mood "stabilized." (Dkt. #64, Exhibit C).

In October 2003, Plaintiff was transferred to a position with the Streets and Sanitation Department. (Dkt. #39-4 at 6 of 18). On June 30, 2005, Plaintiff's position was eliminated for budgetary reasons at which point she was transferred back to the Assessor's Office in the capacity as an Office Assistant IV.[2] (Dkt. #39 at ¶ 50; Dkt. #39-4 at 6 of 18). After returning to work in the Assessor's Office, Plaintiff's performance was less than adequate and her mental status "deteriorated." (Dkt. #39-4 at 6 of 18; Dkt. #75, Exhibit 1). On September 28, 2005, Plaintiff met with representatives of the Equal Opportunity Department to discuss her unhappiness with being assigned to the Assessor's Office. (Dkt. #64, Exhibit C). During this meeting, Plaintiff "started stuttering and shaking with uncontrollable body movements." Plaintiff departed the meeting and missed the following three days of work. *Id.* On October 7, 2005, Plaintiff was referred by the City of Grand Rapids "for a psychological fitness for duty evaluation to determine whether she is able to carry out the essential job functions of Office Assistant IV and what conditions would have to be met for her to be able to work." (Dkt. #39-4 at 6 of 18; Dkt. #64, Exhibit C).

On October 20, 2005, and October 27, 2005, Plaintiff was examined by Licensed Psychologist, Linda Forsberg, Ph.D. (Dkt. #64, Exhibit C). Psychological testing revealed that Plaintiff

---

[2]  Plaintiff had previously been employed an as Office Assistant I. (Dkt. #75, Exhibits 2-3).

was "experiencing a severe mental disorder." Plaintiff admitted experiencing auditory, visual, and tactile hallucinations. Plaintiff also stated that, "evil spirits possess me at times." Dr. Forsberg diagnosed Plaintiff with Bipolar I Disorder with Psychotic Features and Panic Disorder without Agoraphobia. *Id.* The doctor concluded that Plaintiff "was not psychologically fit for her job as an Office Assistant IV." (Dkt. #64, Exhibit B). The doctor determined that for Plaintiff to be able to return to work the following conditions would have to be satisfied: (1) Plaintiff be assigned to another department outside of City Hall and the Assessor's Office; (2) perform a job that does not involve interaction with others; and (3) perform a job that does not require critical thinking, but is more routine and repetitive in nature. Dr. Forsberg further noted, however, that "even if [these conditions] could be met, [Plaintiff] was, at that time, too unstable to return to work in any capacity." *Id.*

On February 24, 2006, Dr. Rich recommended that Plaintiff "be allowed to return to work on March 1, 2006." (Dkt. #39-2 at 7 of 14). On March 3, 2006, Plaintiff submitted a request for a one year leave of absence. (Dkt. #39 at ¶ 26; Dkt. #39-4 at 2 of 18). On March 10, 2006, George Childers, Jr., Labor Relations Manager, informed Plaintiff that "we can not approve the requested leave of absence or a return to work at this time." (Dkt. #64, Exhibit E). In making this determination, Childers relied on the advice of Dr. Forsberg who observed that "the letter recommending [Plaintiff's] return to work is not supported at this time by any identified treatment and/or clinical assessment records from Dr. Rich." Childers indicated that before making a decision on the matter, the City required "more definitive information." Specifically, Childers indicated that the city either "must decide whether to again utilize the services of Dr. Forsberg to perform another fitness for duty evaluation" or "[a]lternatively, we would request the treatment records and supporting evaluation documentation from Dr. Rich be provided to assure that his recommendation is based upon a clinical determination of your

ability to successfully return and perform the duties of Office Assistant IV in the City Assessor's Department versus simply your personal desire to do so." *Id.*

On May 25, 2006, Dr. Rich reported that Plaintiff "does present at this time with more mood stability than last fall and is interested in trying to get back to work." (Dkt. #39-2 at 8 of 14). The doctor further reported that "[b]ecause it is possible that [Plaintiff] i[s] entering a period of more mood stability at this time, I support her returning to work." *Id.*

On June 22, 2006, and June 26, 2006, Plaintiff was again examined by Dr. Forsberg. (Dkt. #65, Exhibit F). The doctor reported that "[e]ven when [Plaintiff's] Bipolar Disorder is in remission, she still retains certain personality traits that are not really compatible with a job that requires her to interact with others." Dr. Forsberg concluded that Plaintiff "is not well suited psychologically for the job of Office Assistant IV due to longstanding personality traits." The doctor noted that "[w]hile [Plaintiff] has the cognitive capacity for the job, her lack of interpersonal skills is likely to interfere with her success in a job that requires her to supervise and interact closely with others." The doctor further recommended that Plaintiff "not be returned to her same work assignment in the Assessor's Office since she has a history of problems and a high perception of stress there." Dr. Forsberg was concerned that a return to the Assessor's Office "heightens the risk of relapse to a state of mental instability." *Id.*

Defendants have submitted a copy of the official job description of Office Assistant IV. (Dkt. #75, Exhibit 1). This evidence reveals that the position of Office Assistant IV "is advanced and lead/supervisory clerical/administrative support work." An individual in this position "is responsible for performing complex clerical work" which requires "considerable independent judgment." Such person is also "responsible for assigning and coordinating work of a clerical staff of two or more, and assuring that work is completed according to established standards and deadlines." Requirements of

the position of Office Assistant IV include: (1) "some knowledge of supervisory methods and practices"; (2) "ability to assign work, train, counsel and supervise employees"; (3) "ability to make independent decisions in accordance with departmental policies and procedures"; and (4) "ability to establish and maintain effective working relationships with other employees and the general public." Examples of the duties an Office Assistant IV is expected to perform include: (1) facilitate completion, collection, and flow of required forms/documents; (2) schedule, assign, and coordinate work of subordinate employees; (3) monitor and assist in evaluating work performance; and (4) greet visitors and answer inquiries. This description is consistent with the assertions made by Marie Tubergen, who supervised Plaintiff when she was assigned to the Assessor's Office. Tubergen further asserts that Plaintiff "never adequately learned or performed the essential job functions required of her assigned position" of Office Assistant IV. *Id.*

In October 2006, Plaintiff participated in the civil service examinations to qualify for the following positions: (1) Office Assistant III; (2) Financial Assistant II; and (3) Office Assistant II. (Dkt. #65, Exhibit G). Plaintiff acknowledged at hearing that she did not successfully complete any of these examinations. Plaintiff subsequently expressed interest in being reassigned to one of the following positions: (1) Maintenance Assistant I; (2) Real Property Appraiser I; or (3) Office Assistant I. (Dkt. #65, Exhibits G-H). Plaintiff was informed that her "return to work is to be in compliance with the recommendations of Dr. Linda Forsberg." (Dkt. #65, Exhibit H).

On April 13, 2007, Alan Harper, M.A., a limited-licensed psychologist for Pine Rest, recommended that Plaintiff be assigned to the available Office Assistant I position. (Dkt. #65, Exhibits I-J). On April 18, 2007, Dr. Rich recommended that Plaintiff "be permitted to return to work in the Office Assistant I position." (Dkt. #65, Exhibit J).

Defendants have submitted a copy of the official job description of Office Assistant I. (Dkt. #75, Exhibit 2). This evidence reveals that the position of Office Assistant I "involves standard clerical duties" and "is generally performed under close supervision." Requirements of the position of Office Assistant I include: (1) "some knowledge of office practices, methods and procedures"; (2) "ability to operate a variety of modern office equipment"; (3) "ability to perform clerical work of standard difficulty"; (4) "ability to establish and maintain effective working relationships with other city employees and the general public"; and (5) "ability to work at routine assignments for extended periods." Examples of the duties an Office Assistant I is expected to perform include: (1) perform clerical work; (2) answer telephones and personal inquiries; (3) schedule appointments; (4) prepare material for distribution; (5) post data to individual records; and (6) run errands and make deliveries. This description is consistent with the assertions made by Evelyn Torres, who has worked in the Records Unit of the Grand Rapids Police Department for almost twenty years. Torres further asserts that Plaintiff was previously employed as an Office Assistant I, the essential job functions of which "she was able to perform." *Id.*

On May 7, 2007, and May 9, 2007, Plaintiff was examined by Dr. Forsberg. (Dkt. #66, Exhibit L). The doctor reported that Plaintiff's bi-polar and panic disorders were in remission and that her "avoidant and paranoid personality traits seem less prominent." Noting that Plaintiff's mental stability "is influenced by perceived stress," Dr. Forsberg observed that "[p]lacing [Plaintiff] in a department other than the Assessor's Office where she has a known history of problems and perceived stress is likely to reduce work stress." Dr. Forsberg further observed that "assigning [Plaintiff] to the Police Department, a department she worked in years ago, yet a different environment than her more recent assignments, should be a good choice in terms of 'perceived' stress."

The doctor concluded that Plaintiff "is psychologically fit for the job of Office Assistant I in the Records Unit of the Grand Rapids Police Department."  Dr. Forsberg's recommendation, however, was premised on Plaintiff's compliance with the following: (1) participating in counseling/therapy "on a regular once a week or twice a month basis to assist her in further developing her social skills;" (2) continuing her treatment with Dr. Rich "by seeing him every six to eight weeks, as he designates, and that she comply with the medication regimen prescribed by Dr. Rich;" (3) Plaintiff's "progress at work be closely monitored;" (4) Plaintiff "sign the necessary medical waivers which will allow the City to contact her practitioners to seek input and to report progress at work or concerns regarding perceived mental instability. . .or demonstrating inappropriate interpersonal behavior with management, fellow employees, or members of the public;" and (5) if Plaintiff exhibits a reoccurrence of "symptoms of mental instability," she be "re-evaluated for duty fitness."  *Id.*

On May 29, 2007, the City of Grand Rapids extended to Plaintiff an offer of employment. (Dkt. #66, Exhibit M).  Pursuant to this proposed agreement, Plaintiff would be reassigned to the position of Office Assistant I in the Records Unit of the Grand Rapids Police Department, subject to certain terms and conditions, including:

(1)     the period from December 7, 2005, through February 28, 2006, "shall be carried as an approved leave of absence" under the FMLA;

(2)     the period from March 1, 2006, through May 29, 2007, "shall be carried as an approved leave of absence;"

(3)     Plaintiff "shall be required to participate in individual counseling/therapy on a regular once a week or twice a month basis to assist her in further developing her social skills;"

(4)     Plaintiff shall be required: (a) "to continue in her treatment with Dr. Gary L. Rich. . .by seeing him every

<blockquote>
<blockquote>
six (6) to eight (8) weeks, as he designates, and shall comply with the medication regimen prescribed by Dr. Rich" and (b) "to sign the necessary medical waivers to allow [the City] to contact Dr. Rich to ensure these conditions are being met;"

(5)     Plaintiff "shall. . .be required to sign the necessary medical waivers which will allow the City to contact her practitioners to seek input and to report progress at work as well as establish the right to have discussions regarding perceived mental instability. . .or demonstrating inappropriate interpersonal behavior with management, fellow employees, or members of the public;" and

(6)     Plaintiff shall inform the City "of any change or additions in her designated practitioners."
</blockquote>
</blockquote>

*Id.*

On June 4, 2007, Plaintiff notified the City that she was refusing the offer to be reassigned to the position of Office Assistant I in the Records Unit of the Grand Rapids Police Department. (Dkt. #66, Exhibit N). Following a hearing on the matter, Plaintiff was terminated from her position as an Office Assistant IV, "based upon a lack of psychological fitness for such appointment, effective August 23, 2007." (Dkt. #66, Exhibits N-O).

In October 2007, Plaintiff filed with the Michigan Department of Civil Rights and the Equal Employment Opportunity Commission a complaint alleging that the City of Grand Rapids had subjected her to retaliation and unlawful discrimination. (Dkt. #67, Exhibit P). These complaints were unsuccessful and on February 26, 2010, Plaintiff, without benefit of counsel, initiated the present action against the City of Grand Rapids and City Manager, Greg Sundstrom. Plaintiff asserts numerous claims in her amended complaint. Specifically, Plaintiff alleges that Defendants: (1) violated her rights under the Americans with Disabilities Act (ADA); (2) violated her rights under the Equal Protection Clause of the Fourteenth Amendment; (3) subjected her to unlawful retaliation; (4) violated her right to due

process; and (5) violated her rights under Title VII of the Civil Rights Act. (Dkt. #39). Plaintiff also asserts numerous state law claims. Defendants now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of

the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth

Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.**          **Plaintiff's Claim under the Americans with Disabilities Act**

Plaintiff asserts that she "has a mental impairment that substantially limits a major life activity." Plaintiff further asserts that Defendants failed to reasonably accommodate her impairment, thereby violating her rights under the Americans with Disabilities Act (ADA).

The ADA prohibits covered employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines disability as: (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(1). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Under the ADA, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Because Plaintiff's discrimination claim is based entirely on circumstantial evidence, her claim is analyzed pursuant to the standard established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. *See James v. Goodyear Tire & Rubber Co.*, 354 Fed. Appx. 246, 248 (6th Cir. Dec. 3, 2009) (citing *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 553 (6th Cir. 2008)). Pursuant to this standard, Plaintiff must first articulate a prima facie case of discrimination. *See Brown v. Chase Brass & Copper Co., Inc.*, 2001 WL 814931 at *4 (6th Cir., July 10, 2001) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)). To establish a prima facie case of discrimination under the ADA, Plaintiff must establish the following: (1) she is a disabled person as defined by the ADA; (2) she is qualified to perform the essential functions of her job with or without reasonable accommodation; and (3) she suffered an adverse employment decision because of her disability. *See Stokes v. Hamilton County, Tenn.*, 113 Fed. Appx. 680, 683 (6th Cir., Oct. 28, 2004) (quoting *Gilday v. Mecosta County*, 124 F.3d 760, 761 (6th Cir. 1997)).

If Plaintiff establishes a prima facie case of discrimination, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for undertaking the adverse employment action against Plaintiff. *See James*, 354 Fed. Appx. at 248. If Defendant produces evidence of a

legitimate, non-discriminatory reason for undertaking such action, the burden shifts back to Plaintiff to introduce evidence that the proffered reason is merely a pretext for improper discrimination. Despite the shifting nature of the analysis, however, the burden on the ultimate question of whether Defendants discriminated against Plaintiff, remains always with Plaintiff. *Id.*

A.     Plaintiff Cannot Establish a Prima Facie Case of Discrimination

There is little doubt that Plaintiff is disabled as defined by the ADA (or at least was so disabled as of the date Plaintiff was terminated from her position as Office Assistant IV). As noted above, the ADA defines disability as a physical or mental impairment that substantially limits one or more major life activities, such as working. To satisfy this requirement, Plaintiff must establish more than the mere "inability to perform a single, particular job," but instead must show that she is "significantly restricted in [her] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person with comparable training, skills, and abilities." *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 253 (6th Cir. 2000). The evidence described above, reveals that during the time period in question Plaintiff's mental impairments prevented her from performing "either a class of jobs or a broad range of jobs in various classes as compared to the average person with comparable training, skills, and abilities." Defendants have not asserted otherwise.

There, likewise, is no dispute that Plaintiff suffered an adverse employment action because of her disability. Defendants acknowledge that they terminated Plaintiff's employment because her mental impairment rendered her incapable of performing the position of Office Assistant IV. Defendants assert, however, that Plaintiff's claim fails because she has failed to demonstrate that she was qualified to perform the essential functions of her job (Office Assistant IV) with or without

reasonable accommodation and, furthermore, declined their offer of reasonable accommodation (reassignment to position of Office Assistant I).

The relevant regulations provide that the term "essential functions" refers to "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). The term "essential functions" does not, however, include "the marginal functions of the position." *Id.* A job function may be considered essential for any of several reasons, including the following:

> (i)     the function may be essential because the reason the position exists is to perform that function;
>
> (ii)    the function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
>
> (iii)   the function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform that particular function.

29 C.F.R. § 1630.2(n)(2).

The regulations further provide that evidence of whether a particular function is essential includes the following:

> (i)     the employer's judgment as to which functions are essential;
>
> (ii)    written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii)   the amount of time spent on the job performing the function;
>
> (iv)   the consequences of not requiring the incumbent to perform the function;

(v)     the terms of a collective bargaining agreement;

(vi)    the work experience of past incumbents in the job; and/or

(vii)   the current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

Defendants bear the burden to demonstrate that a particular job criterion constitutes an essential function. *See Manigan v. Southwest Ohio Regional Transit Authority*, 385 Fed. Appx. 472, 476 (6th Cir., July 12, 2010) (citing *Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2010)) ("[t]he employer has the burden of proving that a challenged job criterion is an essential function"). Determination of whether a particular job function is essential is "highly fact specific," *Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 726 (6th Cir. 2000), and "should be based upon more than statements in a job description and should reflect the actual functioning and circumstances of the particular enterprise involved." *Hall v. United States Postal Service*, 857 F.2d 1073, 1079 (6th Cir. 1988). The necessary factual inquiry, however, "need be no more extensive than the facts of the case demand." *Carr v. Reno*, 23 F.3d 525, 530 (D.C. Cir. 1994). Furthermore, "nothing prevents a court from resolving a summary judgment motion on the basis of such a fact-specific determination when the evidence before the court pertinent to essentiality does not conflict, insofar as the non-moving party has failed to create a genuine issue of material fact." *Chase Brass*, 14 Fed. Appx. at 489. In this respect, the Court finds that Defendants have met their burden of establishing that the essential functions of the positions of Office Assistant I and Office Assistant IV are as articulated above.

While Defendants bear the burden to establish what constitutes the essential functions of a particular job, Plaintiff bears the burden of establishing that she was qualified to perform the essential functions of the position of Office Assistant IV with or without reasonable accommodation.

*See Ozlek v. Potter*, 259 Fed. Appx. 417, 420 (3rd Cir., Dec. 19, 2007) ("the burden is on the employee to prove he is an 'otherwise qualified' individual"); *McDonald v. Pennsylvania Office of Attorney General*, 2010 WL 1856030 at \*11 (W.D. Pa., May 10, 2010) (same).

In her amended complaint, Plaintiff asserts that she "WAS able to perform the essential functions of the Office Assistant IV position in the City Assessor's office without any reasonable accommodation." (Dkt. #39 at ¶ 14). Plaintiff, however, offers absolutely no evidence to support this assertion. Moreover, as discussed above, the evidence reveals that Plaintiff's mental impairments (even when in remission) rendered her incapable of performing the essential job functions of an Office Assistant IV.

In October 2005, Dr. Forsberg observed that Plaintiff was "experiencing a severe mental disorder" and that as a result she "was not psychologically fit for her job as an Office Assistant IV." In June 2006, Dr. Forsberg reported that even though Plaintiff's mental impairments were in remission she "still retains certain personality traits that are not really compatible with" her job as an Office Assistant IV. The doctor further observed that Plaintiff "is not well suited psychologically for the job of Office Assistant IV due to longstanding personality traits." The doctor also noted her concern that returning Plaintiff to her position as an Office Assistant IV (or to any position in the Assessor's Office) "heightens the risk of relapse to a state of mental instability." In April 2007, Alan Harper and Dr. Rich both recommended that Plaintiff be reassigned to a position as Office Assistant I. In May 2007, Dr. Forsberg reiterated that returning Plaintiff to her position as an Office Assistant IV would almost certainly exacerbate her mental impairments. The doctor instead recommended that Plaintiff be reassigned to a position as Office Assistant I, subject to the conditions described above.

In sum, the evidence reveals that from October 7, 2005 (the last day Plaintiff worked as an Office Assistant IV or in any other capacity), through August 23, 2007 (the date Plaintiff was terminated from employment), Plaintiff lacked the ability to perform the essential job functions of an Office Assistant IV with or without reasonable accommodation due to her inability to supervise and interact closely with others, essential functions of this particular job.

Plaintiff asserts that Defendants "chose not to honor Plaintiff's request for a reasonable accommodation." (Dkt. #39 at ¶ 13). Plaintiff fails, however, to describe what accommodation she requested from Defendants. The Court is at a loss to discern what *reasonable* accommodation Defendants could have offered to Plaintiff that, in light of her very serious mental impairments, would have enabled her to successfully perform the job of Office Assistant IV. Defendants nevertheless attempted to accommodate Plaintiff's disability by offering her reassignment to the job of Office Assistant I.

Under the ADA, a "reasonable accommodation" may include "reassignment to a *vacant* position." 42 U.S.C. § 12111(9)(B) (emphasis added). The question, therefore, becomes "the extent to which an employer is 'obligated to reassign [a disabled employee] to a different position when, as a result of [her] disability, [that employee can] no longer perform the essential functions of [her] job." *See Burns*, 222 F.3d at 256-57. As the Sixth Circuit has recognized, "an employer has a duty under the ADA to consider transferring a disabled employee who can no longer perform his old job even with accommodation to a new position within the [c]ompany for which that person is otherwise qualified." *Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007). This duty, however, does not require employers "to create new jobs [or] displace existing employees from their positions. . .in order to accommodate a disabled individual." *Id.*

To establish a prima facie case of disability discrimination under the ADA, Plaintiff "must show that [she] requested, and was denied, reassignment to a position for which [she] was otherwise qualified." *Burns*, 222 F.3d at 258. The evidence submitted reveals that Defendants offered to reassign Plaintiff to a different position for which she was qualified, a position which she had previously performed with success, but that Plaintiff declined the offer.

As previously noted, the ADA only prohibits discrimination against a "qualified individual with a disability," defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." As the evidence reveals, Plaintiff has failed to establish that she was able to perform (with or without accommodation) the essential functions of the job she held as an Office Assistant IV. Defendants thereafter attempted to accommodate Plaintiff by reassigning her to a position (Office Assistant I) for which she was qualified and previously performed successfully. Plaintiff, however, refused to accept this position. Plaintiff has failed to present evidence that there existed any other vacancy for which she was qualified. In sum, Defendants have established that there exists no material factual dispute as to this particular claim and that they are entitled to judgment thereon. Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to this claim.

## II.        Plaintiff's Other Federal Law Claims

On November 16, 2007, Plaintiff initiated a lawsuit against the City of Grand Rapids and several of its employees (but not Greg Sundstrom). *Fuentes v. Tubergen, et al.*, 1:07-cv-1159 (W.D. Mich.). In this previous action, Plaintiff asserted various claims of discrimination based on several complaints she filed with the EEOC regarding the very same conduct which gives rise to the present

action, namely that the City of Grand Rapids (and certain of its employees) violated her rights by requiring her to submit to a psychological evaluation in October 2005 and later by terminating her employment in August 2007. On April 18, 2008, the Honorable Richard Alan Enslen granted Defendants' motion to dismiss, dismissing with prejudice Plaintiff's claims and entering judgment in favor of Defendants. *Id.* at dkt. #22. As noted above, Plaintiff has asserted in the present action various other federal law claims. Defendants assert that these claims are barred by the doctrines of res judicata or collateral estoppel.

The doctrine of res judicata, also known as claim preclusion, provides that "a final judgment on the merits of an action precludes the 'parties or their privies from relitigating issues that were or could have been raised' in a prior action." *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). To apply res judicata, four elements must be satisfied: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Kane*, 71 F.3d at 560 (citation omitted).

Collateral estoppel "bars subsequent relitigation of a fact or issue where that fact or issue was necessarily adjudicated in a prior cause of action and the same fact or issue is presented in a subsequent suit." *Tenenbaum v. United States Dep't of Defense*, 2010 WL 5230875 at *2 (6th Cir. Dec. 20, 2010) (quoting *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589 (6th Cir. 2009)). To apply collateral estoppel four elements must be satisfied: (1) the precise issue must have been raised and litigated in the prior action; (2) the determination of the issue must have been necessary to the outcome of the prior action; (3) the prior proceedings must have resulted in a final judgment on the merits; and

(4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Tenenbaum*, 2010 WL 5230875 at *2 (citing *Cobbins*, 566 F.3d at 589-90).

### A.    Retaliation Claims

In the present action, Plaintiff asserts that she was subjected to unlawful retaliation after submitting complaints to the EEOC in March 2003 and April 2007. (Dkt. #39 at ¶¶ 2-4). Plaintiff further asserts that she was subjected to unlawful retaliation after being reassigned to the Assessor's Office in July 2005. *Id.* at ¶¶ 49-50. All four elements of the res judicata analysis are satisfied as to the retaliation claims asserted in the present action. That the previous action was asserted against a different individual defendant is of no consequence, as the individual defendants in both actions share an identity of interests. *See Ranir, LLC v. Dentek Oral Care, Inc.*, 2010 WL 3222513 at *5-6 (W.D. Mich., Aug. 16, 2010) (recognizing that in the context of res judicata, privity refers to "an identity of interests relating to the subject matter of the litigation, and it does not embrace relationships between the parties themselves"). The undersigned, therefore, recommends that Plaintiff's retaliation claims asserted in the present action be dismissed on res judicata grounds.

### B.    Equal Protection Claim

In the present action, Plaintiff asserts the legal conclusion that Defendants denied her of the right to the equal protection of the laws. (Dkt. #39 at ¶ 42). Plaintiff could have litigated this claim in the prior action. Accordingly, the undersigned recommends that Plaintiff's equal protection claim asserted in the present action be dismissed on res judicata grounds.

C.      Title VII Claim

In the present action, Plaintiff asserts that she "has established a Civil Rights Title VII case because. . .(1) she is a member of a protected class (2) Plaintiff was qualified for the position that she was unlawfully terminat[ed] from [and] (3) the Plaintiff's duties were ultimately filled by person/persons not in a protected class."  (Dkt. #39 at ¶ 65).  Thus, this claim is based on Plaintiff's allegedly unlawful termination from her position as an Office Assistant IV.  As Defendants correctly assert, however, this claim must be dismissed for failure to exhaust administrative remedies.

A plaintiff must satisfy two prerequisites before bringing a Title VII action in federal court.  She must first timely file a charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC).  *See Granderson v. University of Michigan*, 211 Fed. Appx. 398, 400 (6th Cir., Dec. 12, 2006); *Harris v. Giant Eagle, Inc.*, 133 Fed. Appx. 288, 292 (6th Cir., May 27, 2005).  She must then initiate her action in federal court within 90 days of receiving a right-to-sue letter from the EEOC.  *See Granderson*, 211 Fed. Appx. at 400; *Harris*, 133 Fed. Appx. at 292.

A plaintiff cannot assert a Title VII claim in federal court unless she first pursued such before the EEOC.  *See Tisdale v. Federal Express Corp.*, 415 F.3d 516, 527 (6th Cir. 2005) (quoting *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992)).  The Sixth Circuit has cautioned, however, that a pro se plaintiff's complaint to the EEOC must be "liberally construed."  *Tisdale*, 415 F.3d at 527 (quoting *Haithcock*, 958 F.2d at 675); *see also*, *Duggins v. Steak 'N Shake*, 195 F.3d 828, 831-32 (6th Cir. 1999).  Nevertheless, "the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination."  *Tisdale*, 415 F.3d at 527 (quoting *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991)).  Accordingly, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the

plaintiff is not precluded from bringing suit on that claim." *Tisdale*, 415 F.3d at 527 (quoting *Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998)).

In her complaint to the EEOC, Plaintiff charged the City of Grand Rapids with discrimination and retaliation in violation of the ADA and the Michigan Persons with Disabilities Act. (Dkt. #67, Exhibit P). The EEOC interpreted Plaintiff's complaint as asserting a claim under the ADA, but not Title VII. *Id.* There is no evidence that Plaintiff disputed this characterization or sought to amend her EEOC complaint. Even interpreting Plaintiff's EEOC complaint liberally, the Court finds that it fails to allege facts that could reasonably be expected to prompt an investigation under Title VII.

The Court recommends, therefore, that Plaintiff's Title VII claim be dismissed because Plaintiff failed to properly exhaust such before initiating the present action. However, even if Plaintiff's EEOC complaint is interpreted as alleging facts sufficient to trigger an investigation under Title VII, the Court recommends, in the alternative that Defendants are entitled to summary judgment as to this claim.

To state a prima facie claim for race discrimination under Title VII, Plaintiff must establish that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) a similarly-situated person who was not in the protected class received the job. *See Mynatt v. Lockheed Martin Energy Systems, Inc.*, 271 Fed. Appx. 470, 476-77 (6th Cir., Mar. 18, 2008).

As discussed above, the evidence reveals that when Plaintiff was terminated from the position of Office Assistant IV, she was *not* qualified for such. Furthermore, Plaintiff has failed to present any evidence that she was subsequently replaced by a similarly-situated person who is not a member of a protected class. Accordingly, the undersigned recommends, in the alternative, that Defendants be granted summary judgment as to this claim.

D.       Due Process Claim

Plaintiff asserts that she was removed from her position of Office Assistant IV on October 7, 2005, and later terminated from this position effective August 23, 2007, without benefit of due process.  (Dkt. #39 ¶¶ 58-59).  Plaintiff could have litigated these claims in the prior action.  Accordingly, the undersigned recommends that Plaintiff's due process claims asserted in the present action be dismissed on res judicata grounds.

III.              **Plaintiff's State Law Claims**

As previously noted, Plaintiff also asserts numerous state law claims.  While the Court *could* retain jurisdiction over Plaintiff's state law claims, the undersigned recommends that these claims be dismissed without prejudice.

Pursuant to 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a state law claim if it "has dismissed all claims over which it has original jurisdiction."  Indeed, "if the federal claims are dismissed before trial. . .the state claims should be dismissed as well."  *Taylor v. First of America Bank - Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also*, *Wojnicz v. Davis*, 2003 WL 21774162 at *3 (6th Cir., July 29, 2003) (same).  Accordingly, the undersigned recommends that the Court decline to exercise jurisdiction over Plaintiff's state law claims and instead dismiss such without prejudice so that Plaintiff may pursue them in the appropriate state forum.

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (dkt. #62), be **granted** and Plaintiff's action dismissed. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  April 4, 2011                                      /s/ Ellen S. Carmody
                                                                ELLEN S. CARMODY
                                                                United States Magistrate Judge